UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRIANA LEAKAS, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>MONTEREY BAY MILITARY HOUSING, LLC, et al.,<br><br>   Defendants. | Case No. 22-cv-01422-VKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>Re: Dkt. No. 16 |

  Plaintiffs Briana Leakas and her minor son, D.L. (along with Theodore Leakas, D.L.'s guardian ad litem),[1] bring this tort action for personal injuries they claim they sustained as a result of toxic mold contamination in the home they leased while living on the U.S. Army Garrison Presidio of Monterey. Following the removal of this action from the Monterey County Superior Court, plaintiffs voluntarily dismissed two defendants, Clark Enterprises USA, LLC and Pinnacle Monterey, LLC. *See* Dkt. Nos. 11, 12.

  The remaining three defendants—Monterey Bay Military Housing, LLC ("MBMH"), Michaels Management Company, Inc. ("Michaels")[2] and Clark Pinnacle Monterey Bay, LLC ("Clark Pinnacle") (collectively "defendants")—now move pursuant to Rules 8, 9, and 12(b)(6) to dismiss the complaint. Plaintiffs oppose the motion. Upon consideration of the moving and

---

[1] Plaintiffs obtained an order appointing Mr. Leakas as D.L.'s guardian ad litem while this case was pending in the state court. *See* Dkt. No. 1 at ECF 14-15.

[2] The complaint names "Michaels Management Services, LLC." However, Michaels seems to refer to itself variously as "Michaels Management Company, Inc." and "Michaels Management Services, Inc." *See* Dkt. No. 16 at 1, 5, 6. For convenience, the Court refers to this defendant as "Michaels."

responding papers, as well as the oral arguments presented on June 14, 2022, the Court grants in part and denies in part defendants' motion to dismiss the complaint.[3]

## I.   BACKGROUND

The following background facts are drawn from the allegations of plaintiffs' complaint, which for present purposes, are deemed true.

From June 2019 through August 31, 2020, plaintiffs lived in a home on the U.S. Army Garrison Presidio of Monterey that they leased from the defendants. Dkt. No. 1 (Complaint ¶ 11). Defendants are all identified as entities that "participated in the ownership, management, leasing, maintenance, and/or attempted and negligent repair" of the subject property. *Id*. ¶¶ 3, 4, 7. MBMH allegedly failed to provide or maintain a reasonably habitable environment for plaintiffs, despite repeated fraudulent representations of habitability. *Id*. ¶ 12.

Sometime in February 2020, Ms. Leakas complained to MBMH about feeling ill and about a "musty" smell in the master bedroom of their home. *Id*. ¶ 15. Defendants inspected the property on February 26, 2020, stated that plaintiffs had "the flu," and opened windows in the home, but did not conduct any tests or any further inspection of the property. *Id*. ¶ 17.

Two days later, on February 28, 2020, defendants conducted an annual inspection of the property. A test revealed a high level of moisture in the master bedroom. Although defendants scheduled remediation, "apparently due to COVID-19, remediation was pushed back to in [sic] June of 2020." *Id*. ¶ 18. Plaintiffs allege, on information and belief, that defendants knew or reasonably should have known about the mold problem in their home by at least the February 28, 2020 annual inspection. *Id*. According to plaintiffs, Colonel Gregory Ford, then the Garrison Company Commander, told Ms. Leakas that defendants knew of ongoing and persistent leaks involving the toilets in the homes managed by defendants, but that defendants were not taking active steps to address the issues. *Id*. ¶ 19. Plaintiffs further allege, on information and belief, that water intrusion and mold issues in their home were caused by those same toilet issues. *Id*. ¶ 20.

---

[3] Plaintiffs and all remaining defendants have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 8, 10, 21.

During the June 2020 remediation, plaintiffs remained in the home and aver that they were subject to improper protocols, including a toilet wrapped in plastic, having to remove waste in untied bags, a lack of protective materials on the floor, and the removal of baseboards in Ms. Leakas's bedroom. *Id.* ¶ 21. That same month, on the day following remediation, Ms. Leakas became ill and went to urgent care where she was diagnosed with a sinus infection. *Id.* ¶ 22. During this same period, D.L. vomited profusely while sleeping in the master bedroom where the initial remediation took place. *Id.* ¶ 23. Plaintiffs complained to Colonel Ford, the military officer in charge of housing issues, about the lack of care taken during the remediation process. Plaintiffs claim that they also constantly noted their concerns to MBMH about visible mold growth in the master bedroom and bathroom, but their concerns were disregarded. *Id.* ¶ 24.

On June 12, 2020, following remediation, defendants began to rebuild the bathroom. Colonel Ford moved plaintiffs to a hospitality home. Plaintiffs left all their household goods behind due to mold contamination and were not able to use any of their personal property without proper remediation. *Id.* ¶¶ 25, 28. Plaintiffs further allege that they were not told how long they would be displaced from their home and were not given personal property (e.g., trash cans, cookware, and a washer and dryer) to use in the meantime. Although the hospitality home recently had been remodeled, plaintiffs say that they quickly discovered mold also growing in that home. *Id.* ¶¶ 26, 27.

Around June 24, 2020, MBMH agreed to conduct an inspection of the completed remediation at plaintiffs' leased home. However, the inspection reportedly "failed due to the dust and debris which was left behind from the remediation and rebuild of the Master bathroom." *Id.* ¶ 29. Meanwhile, plaintiffs allege that for one month, the home "sat empty while [they] fought with MBMH to pay for additional testing" at the property. *Id.* ¶ 30.

Oscar Ordonez, identified as an MBMH military advisor, suggested testing by Green Home Solution. *Id.* ¶ 32. Plaintiffs say that because Green Home Solution had a contract with MBMH, they instead chose to hire Adviro Environmental Consulting and Testing ("Adviro"), a private mold testing company, to conduct an air quality test to identify the types of mold present at the property. Adviro stated that it could conduct the test, but advised that the test should have

1  been conducted within 48 hours of remediation, and that testing would not accurately reflect the
2  levels of mold in the house during the period of time plaintiffs occupied the premises. *Id*. ¶ 31.
3  Adviro conducted an air quality test on July 10, 2020, and results showed higher-than-normal
4  levels of aspergillus and penicillium, as well as the presence of Chaetomium, a heavy spore said to
5  be indicative of a larger problem in the house caused by water damage. *Id*. ¶ 33. Humidity levels
6  in the house were also found to be higher than recommended. *Id*. Plaintiffs say they emailed
7  Adviro's report to MBMH on July 17, 2020, but their "concerns were once again brushed off,"
8  and plaintiffs were expected to move back into the leased home following an inspection. *Id*.
9  ¶¶ 34, 35.

10  Around July 24, 2020, MBMH conducted an inspection and moisture test of the leased
11  home. According to the complaint, defendants represented that the inspection did not show
12  elevated moisture levels. However, plaintiffs say that they continued to notice mold growth on the
13  surface of the drywall in the living room closet. *Id*. ¶ 36. Before plaintiffs moved back into the
14  leased home, defendants allegedly conducted a second "remediation" of the property, "despite
15  representing that the July 2020 inspection did not reveal elevated levels of moisture." *Id*. ¶ 37.
16  Plaintiffs allege that they were not informed about this second "remediation" and were not given
17  an opportunity to remove their belongings from the home. *Id*.

18  Plaintiffs say that they conducted at-home mold testing on their household goods and
19  detected the presence of further mold growth, leading to a second round of testing by Adviro. *Id*.
20  ¶ 38. Due to the presence of toxic mold spores, plaintiffs were forced to discard most of their
21  belongings, including clothes and furniture. *Id*. ¶ 39.

22  Plaintiffs allege that they suffered serious health problems "[a]s a consequence of
23  [MBMH]'s poor maintenance and upkeep of the" leased property. *Id*. ¶ 40. Ms. Leakas says she
24  developed chronic sinus issues and migraines, and also suffers from Dysautonomia (a condition
25  affecting the nervous system). Doctors reportedly told Ms. Leakas that her pre-existing Ehlers-
26  Danlos Syndromes made her more susceptible to the toxic mold at the leased home. *Id*. ¶¶ 41, 44,
27  45, 52, 53, 55. Ms. Leakas says that her ongoing health issues require continuing hospital visits
28  and have prevented her from returning to work and engaging in any kind of physical activity. *Id*.

¶¶ 51, 54, 56.  The complaint further alleges that D.L. suffered from vomiting, "relentless ear, eye and respiratory infections," as well as allergy-like symptoms, including red, itchy eyes, sneezing and rashes on exposed skin.  *Id*. ¶¶ 42, 46, 47, 48.  Although D.L.'s vomiting stopped once he was removed from the master bedroom in the leased home, his rashes continued even after plaintiffs permanently moved out of the house.  *Id*. ¶ 46.

Plaintiffs filed the present lawsuit in the Monterey County Superior Court on January 26, 2022.  *See* Dkt. No. 1 at ECF 10.  Their complaint asserts 11 claims for relief against all defendants: (1) negligence, (2) nuisance, (3) negligent misrepresentation, (4) negligent infliction of emotional distress, (5) breach of implied warranty of habitability, (6) breach of implied covenant of quiet use and enjoyment, (7) rent abatement, (8) gross negligence, (9) premises liability, (10) constructive (wrongful) eviction, and (11) fraud—concealment.  *Id*. at ECF 30-47. Plaintiffs seek general, special, punitive and exemplary damages, costs of investigation, as well as their attorneys' fees and litigation expenses.  *Id*. at ECF 47-48.

The matter was removed to this Court on March 4, 2022 on the grounds that the underlying events occurred on a federal enclave.  *See* Dkt. No. 1; *see also Albers v. Yarbrough World Sols., LLC*, No. 5:19-cv-05896-EJD, 2020 WL 2218964, at *7 (N.D. Cal. May 7, 2020) ("The California Legislature ceded the Monterey Presidio to the United States Government in 1897.  It is not contested by the Parties and the case law supports that, when California ceded the Presidio to the United States, exclusive jurisdiction over that area was conferred upon the United States.") (citations omitted).

Defendants MBMH, Michaels and Clark Pinnacle move to dismiss the complaint pursuant to Rules 8, 9 and 12(b)(6).  Their arguments essentially are two-fold.  First, defendants contend that with respect to all claims for relief, the complaint does not satisfy Rule 8's notice requirements because the allegations improperly group all defendants together without adequately identifying what each defendant is alleged to have done that harmed plaintiffs.  Second, defendants argue the complaint fails, in any event, to state sufficient facts to support claims for negligence (Claim 1), nuisance (Claim 2), negligent misrepresentation (Claim 3), rent abatement (Claim 7), gross negligence (Claim 8), premises liability (Claim 9), and fraud—concealment

5

(Claim 11).

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id*.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if the facts pled permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678.

Documents appended to or incorporated into the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

## III. DISCUSSION

### A. Rule 8 Notice Requirements

Defendants argue that the complaint as a whole does not satisfy Rule 8's notice requirements because the allegations fail to distinguish between the defendants and instead

impermissibly refer to "defendants" as an undifferentiated group.

To satisfy Rule 8(a)(2)'s requirement that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief," plaintiffs must allege the basis of their claims against each defendant. *Villalpando v. Exel Direct Inc.*, Nos. 12-cv-04137 JCS, 13-cv-03091 JCS, 2014 WL 1338297, at *5 (N.D. Cal. Mar. 28, 2014) (citing *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)). "As a general rule, when a pleading fails to allege what role each Defendant played in the alleged harm, this makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations." *Adobe Sys., Inc. v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (internal quotations and citation omitted). "Accordingly, a complaint which "'lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2).'" *Id*. (quoting *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996)). "However, this does not mean that a plaintiff's assertion of claims against 'Defendants' will automatically be deficient." *Id*. "Rather, a plaintiff must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." *Id*. (internal quotations and citation omitted). "Put another way, a plaintiff's allegations must provide sufficient notice to all of the Defendants as to the nature of the claims being asserted against them, including what conduct is at issue." *Id*. (internal quotations and citation omitted).

Except as otherwise discussed below with respect to specific claims, plaintiffs' allegations are sufficient to put MBMH on notice of plaintiffs' claims and MBMH's alleged conduct that harmed plaintiffs. The complaint alleges MBMH's "poor maintenance and upkeep" of the subject property and its failure "to provide or maintain a reasonably habitable environment" for plaintiffs, as demonstrated by plaintiffs' repeated complaints to MBMH about the conditions at the property, MBMH's disregard for plaintiffs' concerns, the parties' disputes over testing, and continued mold growth even after the property purportedly had been remediated and inspected. *See* Dkt. No. 1 (Complaint ¶¶ 14, 15, 24, 29, 30, 32, 34, 36, 40, 50 and 55).

However, plaintiffs' complaint is deficient with respect to Michaels and Clark Pinnacle. Michaels and Clark Pinnacle are each specifically mentioned in only one place in the complaint

7

under a section titled "Parties," identifying these defendants as corporate entities authorized to do business in California that "participated in the ownership, management, leasing, maintenance, and/or attempted and negligent repair" of the subject property. Dkt. No. 1 (Complaint ¶¶ 4, 7). The complaint further alleges, on information and belief, that Michaels and Clark Pinnacle are each an "agent for [MBMH] with respect to ownership, management, leasing, maintenance, and/or attempted and negligent repair" of the subject property. *Id*.

Plaintiffs maintain that all of the defendants "share ownership and employees, which supports the contention that an act of one is an act of all." Dkt. No. 22 at 4. Courts have recognized that "where the defendants are alleged to be 'related entities' who acted in concert 'it is entirely possible that the allegations of wrongdoing are intended to include each and every entity defendant.'" *In re Pac. Fertility Ctr. Litig.*, No. 18-cv-01586-JSC, 2019 WL 3753456, at *3 (N.D. Cal. Aug. 8, 2019) (quoting *Tivoli LLC v. Sankey*, No. SA CV 14-1285-DOC (JCGx), 2015 WL 12683801, at *4 (C.D. Cal. Feb. 3, 2015)). However, plaintiffs' complaint contains no allegations about shared ownership and employees, and the current allegations concerning Michaels's and Clark Pinnacle's purported relationship with MBMH are highly conclusory. While plaintiffs cannot be expected to know, at this stage of the litigation, precise details about what role each played in the underlying events, the complaint as currently pled does not satisfy Rule 8's notice requirement with respect to Michaels and Clark Pinnacle. *Cf. In re Pac. Fertility Ctr. Litig.*, 2019 WL 3753456 at *3-4 (finding allegations sufficient to put defendants on notice of plaintiffs' claims where the complaint alleged facts regarding defendant's role in egg and embryo storage operation and the close relationship between defendants, as well as plaintiffs' lack of knowledge of either defendant until after the action was filed); *Tivoli*, 2015 WL 12683801, at *4 (finding complaint sufficient where plaintiff alleged facts regarding defendants' closely related corporate affiliation in the same general line of business); *Munning v. The Gap, Inc.*, No. 16-cv-03804-TEH, 2016 WL 6393550, at *3 (N.D. Cal. Oct. 28, 2016) (finding that "because the Defendants all share a parent-subsidiary relationship with The Gap, Inc. as the parent company and because all Defendants are represented by the same counsel, frustration of notice of the claims to each defendant is unlikely.").

8

As to this issue, defendants' motion is denied with respect to MBMH and granted as to Michaels and Clark Pinnacle. Accordingly, plaintiffs' claims against Michaels and Clark Pinnacle are dismissed.

To the extent the remainder of defendants' motion to dismiss raises arguments that are not duplicative of the Rule 8 notice requirement, the Court addresses them below with respect to MBMH.

### B.     Claim 1: Negligence

"Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)). For the reasons discussed above, plaintiffs' complaint pleads sufficient facts to support a plausible claim for negligence against MBMH.

MBMH argues that plaintiffs' negligence claim should be dismissed to the extent that the claim may overlap with, or is duplicative of, the claims for breach of implied warranty of habitability (Claim 5) and gross negligence (Claim 8). However, under Rule 8(d)(2), "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." MBMH's motion to dismiss the negligence claim is denied.

### C.     Claim 2: Nuisance

MBMH argues that the complaint's allegations are entirely conclusory and do not support a claim for nuisance. California law defines a nuisance, in part, as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . .." Cal. Civ. Code § 3479. To qualify as a nuisance, the interference with a plaintiff's interests must be both substantial, i.e., "it caused the plaintiff to suffer substantial actual damage," and objectively unreasonable, i.e., "it must be of such a nature, duration or amount as to constitute unreasonable interference with the

9

use and enjoyment of the land." *San Diego Gas & Elec, Co. v. Super. Ct.*, 13 Cal. 4th 893, 938 (1996) (internal quotations and citations omitted).

Plaintiffs' complaint alleges sufficient facts to support a plausible claim for nuisance against MBMH on the ground that MBMH failed to timely or properly address mold infestation in plaintiffs' home, resulting in severe adverse effects on plaintiffs' health, as well as the loss of plaintiffs' use and enjoyment of their home and other personal property such as clothes, furniture, and other household belongings, and additional expense. *See* Dkt. No. 1 (Complaint ¶¶ 14, 15, 22, 23, 24-30, 32, 34, 36, 40-57, 80-87). MBMH's motion to dismiss this claim is denied.

### D. Claim 7: Rent Abatement

MBMH contends that this claim should be dismissed on the ground that rent abatement is a form of remedy, and not a basis for an affirmative claim for relief. It cites generally to a case, in the home mortgage context, that "equitable relief" is not a claim, but only a remedy. *See generally Cannon v. Wells Fargo Bank, N.A.*, 917 F. Supp. 2d 1025, 1031 (N.D. Cal. 2013). Plaintiffs respond that they are seeking a judicial declaration that the subject property "was effectively worth $0.00 per month" in view of the alleged mold contamination. Dkt. No. 22 at 6. At the hearing, plaintiffs' counsel suggested that plaintiffs are relying on a breach or implied breach of warranty theory in support of this claim (Dkt. No. 30), although they cite no authority that such a theory properly may be a basis for an affirmative claim for rent abatement. Given the uncertainty presently attending plaintiffs' claim, the Court grants MBMH's motion to dismiss.

### E. Claim 8: Gross Negligence

MBMH moves to dismiss this claim, arguing that California law does not recognize a claim for relief for "gross negligence," absent a specific statutory basis. MBMH further contends that plaintiffs' complaint fails, in any event, to state sufficient facts demonstrating that the conduct of MBMH or any other defendant amounts to gross negligence.

With respect to MBMH's first point, MBMH points out that California appellate courts have noted that "'[i]n reality, California does not recognize a distinct cause of action for 'gross negligence' independent of a statutory basis.'" *Eriksson v. Nunnink*, 191 Cal. App. 4th 826, 856 n.18 (2011) (quoting *Saenz v. Whitewater Voyages, Inc.*, 226 Cal. App. 3d 758, 766 n.9 (1990)).

10

1  The California Supreme Court, however, subsequently described that language as "off-hand
2  dicta." *City of Santa Barbara v. Super. Ct.*, 41 Cal. 4th 747, 780 (2007); *see also Hass v.*
3  *RhodyCo Prods.,* 26 Cal. App. 5th 11, 32 (2018) ("In *Santa Barbara,* the Supreme Court did not
4  definitively resolve this issue, commenting only that it did not view its holding invalidating
5  releases for future gross negligence "as recognizing a cause of action for gross negligence.")
6  (quoting *Santa Barbara*, 41 Cal. 4th at 779-80). MBMH has not persuasively demonstrated that
7  plaintiffs' gross negligence claim fails simply because they have not pled a statutory basis for it.
8  *See D'Antonio v. Monterey Bay Military Housing, LLC*, Nos. 4:21-CV-2607-YGR and 4:21-CV-
9  4535-YGR, 2021 WL 5771139, at *4 (N.D. Cal. Dec. 6, 2021) (rejecting arguments "that
10 plaintiffs' failure to plead a statutory basis for gross negligence dooms their claim.").

11 As for the sufficiency of plaintiffs' allegations, "'[g]ross negligence is pleaded by alleging
12 the traditional elements of negligence: duty, breach, causation, and damages.'" *Chavez v. 24*
13 *Hour Fitness USA, Inc.*, 238 Cal. App. 4th 632, 640 (2015) (quoting *Rosencrans v. Dover Images,*
14 *Ltd.*, 192 Cal. App. 4th 1072, 1082 (2011)). "However, to set forth a claim for 'gross negligence'
15 the plaintiff must allege extreme conduct on the part of the defendant." *Rosencrans*, 192 Cal.
16 App. 4th at 1082. Such conduct involves "either a 'want of even scant care' or 'an extreme
17 departure from the ordinary standard of conduct.'" *Santa Barbara*, 41 Cal. 4th at 754 (citations
18 omitted). MBMH argues that plaintiffs' allegations fail to sufficiently plead the requisite level of
19 conduct, noting that the complaint states that defendants responded to plaintiffs' complaints,
20 performed two remediations, and tested and inspected the property multiple times. *See, e.g.,* Dkt.
21 No. 1 (Complaint ¶¶ 18, 21, 24, 29, 36, 37). Other allegations of the complaint, however, indicate
22 that MBMH knew about the mold issues, but failed to address them in a timely or proper fashion,
23 and disregarded plaintiffs' repeated complaints and concerns. *See, e.g., id*. (Complaint ¶¶ 14, 15,
24 17, 18, 19, 20, 21, 24, 29, 30, 32, 34, 36, 40, 50, 55, 136, 141). Whether there has been such a
25 lack of care as to constitute gross negligence generally is a question of fact. *See Chavez*, 238 Cal.
26 App. 4th at 640. However, for present purposes, taking the complaint's material allegations as
27 true and viewing them in the light most favorable to plaintiffs, as the Court must at this stage of
28 the proceedings, *see Navarro*, 250 F.3d at 732, the Court finds that plaintiffs have pled sufficient

1    facts to support a plausible claim for gross negligence.

2        Caselaw nonetheless indicates that gross negligence generally is viewed as a degree of
3    negligence, rather than a separate claim for relief distinct from a negligence claim. *See D'Antonio*,
4    2021 WL 5771139, at *5 ("Nevertheless, 'California does not recognize a distinct common law
5    cause of action for gross negligence *apart from negligence*.'") (quoting *Jimenez v. 24 Hour
6    Fitness USA, Inc.*, 237 Cal. App. 4th 546, 552 n.3 (2015)). Accordingly, as in *D'Antonio*,
7    plaintiffs may pursue a claim for gross negligence, but only in the alternative to their separate
8    claim for negligence, as they cannot recover under both theories. *See id*. To that extent, the
9    motion to dismiss plaintiffs' claim for gross negligence is denied.

10       **F.    Claim 9: Premises Liability**

11       Plaintiffs' claim for premises liability asserts that defendants knew or should have known
12   about the presence of toxic mold at the subject property, but failed to fix or repair the issues. Dkt.
13   No. 1 (Complaint ¶¶ 142-149). "The elements of a negligence claim and a premises liability claim
14   are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury."
15   *Kesner v. Super. Ct.*, 1 Cal.5th 1132, 1158 (2016). The touchstone of premises liability is
16   "whether in the management of his property [a property owner] has acted as a reasonable [person]
17   in view of the probability of injury to others[.]" *Laico v. Chevron U.S.A., Inc.*, 123 Cal. App. 4th
18   649, 659 (2004) (internal quotations and citation omitted). "This requires persons to maintain land
19   in their possession and control in a reasonably safe condition." *Id*. (internal quotations and
20   citation omitted); *see also Cody F. v. Falletti*, 92 Cal.App.4th 1232, 1242 (2001) ("Liability is
21   based not on responsibility for the conduct of others, but on the failure of the [land]owner or
22   occupier to act reasonably under the circumstances when he or she has reason to anticipate the
23   probability of injury and has an opportunity to prevent the injury or warn of the peril. Thus,
24   liability is based on his or her own failure to act reasonably").

25       MBMH argues that plaintiffs cannot maintain a claim for premises liability because as
26   tenants, plaintiffs possessed and controlled the subject property and therefore could address
27   moisture issues themselves (e.g., by opening windows, raising the temperature of their heaters, or
28   cleaning the home), whereas MBMH says that its right to enter and control the premises was

limited by the parties' lease agreement. Dkt. No. 16 at 17.

Property owners generally are liable for injuries on land they own, possess, or control. *Alcaraz v. Vece*, 14 Cal. 4th 1149, 1162 (1997). MBMH essentially contends that it cannot be held liable for plaintiffs' injuries because it did not occupy or control the property. However, the California Supreme Court has observed that "the phrase 'own, possess, *or* control' is stated in the alternative." *Id*. Thus, while control of property alone is sufficient, "[a] defendant need not own, possess *and* control property in order to be held liable[.]" *Id*.; *see generally Barnes v. Black*, 71 Cal. App. 4th 1473, 1479 (1999) (holding that fact that tenant was injured on public street over which landlord had no control was not dispositive of the issue whether landlord owed a duty of care).

MBMH's motion to dismiss the premises liability claim is denied.

**G.     Claim 3 (Negligent Misrepresentation) and Claim 11 (Fraud—Concealment)**

Plaintiffs assert claims for negligent misrepresentation and fraud based on alleged misrepresentations that there were no elevated moisture levels found at the subject property, that the subject property was habitable, and that defendants would remediate excessive moisture and humidity levels, but then failed to do so adequately. Dkt. No. 1 (Complaint ¶¶ 88-97, 156-172). MBMH argues that both claims should be dismissed because the complaint does not allege sufficiently specific facts to satisfy Rule 9(b).

To state a claim for fraud under California law, a plaintiff must allege: (1) a misrepresentation (false representation, concealment, or non-disclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage. *Lazar v. Super. Ct*., 12 Cal. 4th 631, 638 (1996). "Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986).

Rule 9(b) requires that for fraud-based claims "a party must state with particularity the

13

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id*. "A pleading is sufficient under [R]ule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 540 (9th Cir. 1989). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotations and citation omitted).

Plaintiffs' complaint does not identify any individual(s) or even which defendants made any particular alleged misrepresentation. Instead, plaintiffs generally allege that "defendants" made misrepresentations at various times about the conditions of the subject property and the remediation or repair of the property. The allegations do not sufficiently distinguish between the defendants or identify their roles in the underlying events to satisfy Rule 9(b) requirements and put defendants on notice of which allegations they must defend. Accordingly, MBMH's motion to dismiss the claims for negligent misrepresentation and fraud is granted.

## IV. LEAVE TO AMEND

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," because "the court must remain guided by the underlying purpose of Rule 15 . . . to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

At the hearing on the motion, plaintiffs represented that they can plead additional facts in

support of their claims against Michaels and/or Clark Pinnacle and their claims for rent abatement, negligent misrepresentation and fraud against all defendants. Accordingly, the Court will give them leave to amend those claims.

## V. CONCLUSION

Based on the foregoing, the Court grants in part and denies in part defendants' motion to dismiss the complaint as follows:

1. The complaint is dismissed as to Michaels and Clark Pinnacle, with leave to amend to plead additional facts to satisfy Rule 8's notice requirements.

2. MBMH's motion to dismiss Claim 3 (negligent misrepresentation), Claim 7 (rent abatement), and Claim 11 (fraud—concealment) is granted with leave to amend.

3. MBMH's motion to dismiss otherwise is denied.

Plaintiffs shall file their First Amended Complaint by **June 30, 2022**.

**IT IS SO ORDERED.**

Dated: June 15, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge